# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WALTER JUBBER,** | * | |
| **Plaintiff** | * | |
| v. | * | |
| | | **CIVIL NO. JKB-19-0717** |
| **EUGENE JUBBER *et al.*,** | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM AND PRELIMINARY INJUNCTION ORDER**

This matter came before the Court on May 29, 2019, for a hearing on Plaintiff Walter Jubber's motion for a preliminary injunction to compel Defendants Eugene Jubber and Allyson Lawliss Jubber, who are Plaintiff's son and daughter-in-law, to provide Plaintiff with the level of financial support mandated by federal law when one agrees to be a sponsor under the Immigration and Nationality Act.[1] (ECF No. 11.) Eugene and Allyson do not contest the legal obligation they undertook when they executed, respectively, Form I-864 Affidavit of Support and Form I-864 Contract Between Sponsor and Household Member, before Walter emigrated from South Africa to the United States. That obligation requires them to provide Walter with a level of income that meets or exceeds 125% of the Federal Poverty Guidelines. In the hearing, the parties agreed that the target figure for that obligation in the year 2019 was $1,761.42 per month for a household of two people, which translates to an annual income of $21,137.[2]

---

[1] In this opinion and order, the Court will refer to the parties by their first names because they all share the same surname.

[2] It is not certain that this is the correct figure when computing Defendants' required level of support because it is only their obligation to support Walter that is at issue rather than an obligation to support Walter and someone else. But the Court chooses to err on the side of generosity for purposes of this opinion and order, especially given the early stage of the proceedings.

The Court heard evidence that Walter had his own electrical contracting and supply companies in South Africa, but those were lost to foreclosure before he moved to the United States. Walter testified that, since his arrival in this country, he has worked in the property management business, first in an LLC set up by Eugene and, currently, for DJ Maintenance, LLC ("DJ"), based in Harrisburg, Pennsylvania, but which employs Walter in the Berlin and Ocean City, Maryland, area. He testified that he works ten hours a week and is paid twenty dollars per hour. The Court uses the rough figure of $800 as Walter's monthly pay from DJ. Walter also testified that he and his partner live in a three-bedroom house in Berlin, Maryland, that is owned by DJ or DJ's owner and that he pays $600 per month in rent; the homeowner also pays the utilities on the rental house. Although this is likely an underestimate, the Court calculates the utility subsidy to Walter as $200 per month. He further testified that he picks up odd jobs for which he earns roughly $100 per month. Walter says he is paid in cash and that he has not filed a tax return for 2018. He also testified his income has not been reported to the Social Security Administration, which indicated they have no record of his having worked any quarters to earn credit.

Eugene testified that he believed his father would work and earn money when he immigrated to the United States, but he had to push Walter to work in Eugene's property management company. Walter and his partner Theodora,[3] lived with Eugene and Allyson for the first year and a half or so after immigrating here, but a rift developed between Eugene and Walter, and as a result, Walter and Theodora moved out of Eugene's and Allyson's house. It was after that when Walter started working for DJ. Eugene also testified that he owns rental properties in the same area where Walter lives, and he estimates the fair market rental value of the home in

---

[3] Walter and Theodora Jubber were married in South Africa but later divorced. Nevertheless, they reconciled and live together. It is the Court's understanding that Eugene and Allyson signed the same forms obligating them to support Theodora as they did for Walter, but their obligation to Theodora has not been at issue in this case, and she is not a plaintiff.

the same area where Walter lives, and he estimates the fair market rental value of the home in which Walter lives to be in the range of $1,200 to $1,400 per month. Utilizing the lower figure of $1,200 per month, the Court deduces Walter receives a rental subsidy of $600 per month.

Based on the evidence adduced at the hearing, the Court finds that the following amounts of income are attributable to Walter on a monthly basis:

```
$800    DJ Maintenance income
$100    average income from odd jobs
$600    rent subsidy
$200    utilities subsidy
$1,700  total
```

This computation results in a monthly shortfall of $61.42 in order to equal 125% of the Federal Poverty Guidelines. This will be the amount for which Eugene and Allyson will be found obligated to pay per month.

In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), the Supreme Court set forth the following standard for preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Id.* at 20. Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Courts are called upon to balance a plaintiff's claims of injury against the burdens to be imposed upon the defendant, and they must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24.

The Court finds Walter is likely to establish a likelihood of success on the merits of his claim that Eugene and Allyson are required to provide financial support to him, that he is likely to suffer irreparable harm without being provided preliminary relief, that the balance of equities tips

3

in his favor, and that an injunction is in the public interest of requiring immigration sponsors to fulfill their legal obligations of support to those whom they sponsor. Accordingly, it is hereby ORDERED that Eugene Jubber and Allyson Jubber are jointly and severally liable to provide monthly income to Walter Jubber in the amount of $61.42, payable the twenty-ninth day of every month, beginning May 29, 2019.[4]

DATED this 30 day of May, 2019.

BY THE COURT:

James K. Bredar
Chief Judge

---

[4] The Court instituted this requirement on May 29, 2019, during the hearing and Eugene and Allyson communicated their understanding that the May 29, 2019, payment must be made within three days' time of the hearing.